1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWARD WILLIAMS,

11              Petitioner,                    No. 2: 11-cv-1762 WBS KJN P

12         vs.

13   MIKE MARTEL,

14              Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner, proceeding without counsel, with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2009 prison disciplinary

19   conviction for introduction/distribution of a controlled substance (heroin) into a state prison in

20   violation of California Code of Regulation Title 15, section 3016(c).  Petitioner was assessed 180

21   days of time credits for this conviction.[1]

22              In the petition form, petitioner lists four claims:  1) inadequate notice of the

23   charges; 2) denial of an investigative employee and witnesses; 3) denial of appeal process; and

24   4) request for restoration of credits assessed for the year prior to the administrative hearing.

25

26   _____
     [1]  Petitioner was also prosecuted in state court based on his possession of heroin.
     Petitioner was found guilty and sentenced to four year imprisonment.

1

1   (Dkt. No. 1 at 5.)  However, in the points and authorities, petitioner states that he is raising two

2   claims: 1) inadequate notice of the charges; and 2) denial of an investigative employee and

3   witnesses.  (Id. at 13.)  In the answer, respondent addresses only petitioner's claims that he was

4   given inadequate notice of the charges and denied an investigative employee.  The undersigned

5   will address all claims raised by petitioner.

6          After carefully considering the record, the undersigned recommends that the

7   petition be denied.

8   II.  Standards for a Writ of Habeas Corpus

9          An application for a writ of habeas corpus by a person in custody under a

10  judgment of a state court can be granted only for violations of the Constitution or laws of the

11  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

12  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

13  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

14         Federal habeas corpus relief is not available for any claim decided on the merits in

15  state court proceedings unless the state court's adjudication of the claim:

16         (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
17         determined by the Supreme Court of the United States; or

18         (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
19         State court proceeding.

20  28 U.S.C. § 2254(d).

21         Under section 2254(d)(1), a state court decision is "contrary to" clearly

22  established United States Supreme Court precedents if it applies a rule that contradicts the

23  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

24  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

25  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

26  (2000)).

1        Under the  "unreasonable application" clause of section 2254(d)(1), a federal

2   habeas court may grant the writ if the state court identifies the correct governing legal principle

3   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

4   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

5   simply because that court concludes in its independent judgment that the relevant state-court

6   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

7   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

8   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

9   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

10  omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

11  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

12  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

13        The court looks to the last reasoned state court decision as the basis for the state

14  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

15  decision, "and the state court has denied relief, it may be presumed that the state court

16  adjudicated the claim on the merits in the absence of any indication or state-law procedural

17  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

18  overcome by a showing that "there is reason to think some other explanation for the state court's

19  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

20        Where the state court reaches a decision on the merits but provides no reasoning

21  to support its conclusion, the federal court conducts an independent review of the record.

22  "Independent review of the record is not de novo review of the constitutional issue, but rather,

23  the only method by which we can determine whether a silent state court decision is objectively

24  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

25  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

26  basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

3

1  determine what arguments or theories supported or, . . . could have supported, the state court's

2  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

3  arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

4  786.

5  III.  Discussion

6             A.  Background

7             The rules violation report describes the circumstances of petitioner's offense as

8  follows:

> On Saturday, April 12, 2008, at approximately 1020 hours, as part of an ongoing investigation into the trafficking/smuggling of narcotics into Mule Creek State Prison (MCSP), ISU Officer S. Pettis and I were conducting video surveillance of the Facility "A" Visiting Room.  I observed Ms. K. Hannon (DOB: 11/06/1961) seated at table # 33, just to the left of inmate WILLIAMS, E-65738, A3-204U.  As part of my observation of Ms. Hannon, her facial expressions gave me the impression that she was very nervous about something.  In my training and experience, this nervous behavior from a visitor is common to see right before narcotics/contraband is passed to the inmate from a visitor.  Ms. Hannon moved her right hand to her right rear waist area of her pants and appeared to remove suspected contraband from her waistband with her right hand.  Ms. Hannon appeared to pass the suspected contraband from her right hand to inmate WILLIAMS' left hand.  Inmate WILLIAMS put both his right and left hands together in front of his waist but it appeared the suspected contraband remained in his left hand.
>
> At approximately 1023 hours, inmate WILLIAMS moved his left hand and arm behind his left side.  The hand and part of the arm went out of my view but were in the area of the top back opening of his state issued denim jeans.  In my training and experience, inmate WILLIAMS' movement is typical of an inmate trying to conceal contraband in his rectal cavity so as to avoid detection when smuggling the contraband into the prison.  I believed inmate WILLIAMS had placed contraband into his rectal cavity with this movement.  I called the Visitor Processing Office and requested Sergeant T. Mulford to respond to the ISU Office.  I called "911" and requested the Ione Police Department to assist in this matter.
>
> At approximately 1043 hours, with the assistance of Visiting Officer J. Ebeling and Visiting Sergeant Mulford, ISU Officer Pettis and I responded to Facility "A" Visiting via the foyer between "A" and "B" Visiting Rooms.  Upon arriving in Facility

"A" Visiting, I observed inmate WILLIAMS and his approved visitor, Ms. K. Hannon, seated at table # 33, just inside the door and to the left of where we had entered the Visiting Room. Sergeant Mulford and I ordered WILLIAMS to stand up and place his hands behind his back; which he complied.  I assisted Sergeant Mulford with placing handcuffs on inmate WILLIAMS.  Sergeant Mulford took custody of inmate WILLIAMS while I placed inmate WILLIAMS' socks up and over the cuffs of his denim jeans. While pulling over the socks of inmate WILLIAMS' jeans, I discovered (2) folded, pre-addressed envelopes in the left sock of inmate WILLIAMS.  I removed the envelopes and placed them in the front zipper of my jumpsuit.

I took custody of inmate WILLIAMS from Sergeant Mulford and with Sergeant Mulford's assistance, I escorted inmate WILLIAMS out of Facility "A" Visiting, through the Facility "A" Inmate Search Room enroute to BCS Cell # 1.  Upon arriving at BCS cell # 1, I performed a clothed body search on inmate WILLIAMS, which was negative for contraband.  I removed the handcuffs from inmate WILLIAMS and performed an unclothed body search of inmate WILLIAMS.  I observed that inmate WILLIAMS' rectal area appeared to be lubricated with an unknown clear jelly-like substance.  In my training and experience, I have learned that inmates will lubricate their rectal area before placing contraband into the cavity to make placing the contraband into the rectal cavity easier.  The unclothed body search was negative for additional contraband.  I placed inmate WILLIAMS into BCS attire and secured him into BCS cell # 1.  I relinquished custody of inmate WILLIAMS to Officer A. Robb who continued observation of inmate WILLIAMS.

I responded to the Visitor Processing Sergeant's Office to conduct an interview with Ms. K. Hannon (see CD placed into ISU Evidence Locker # 2 on April 14, 2008).  With Ione Police Department Sergeant R. Harpham and ISU Officer Pettis as witnesses, I advised Ms. K. Hannon of her Constitutional Rights pursuant to the Miranda Decision.  Ms. K. Hannon stated she understood her rights and we proceeded to question Ms. K. Hannon pertaining to this case.  Also, while in the Visiting Sergeant's Office (prior to Ms. K. Hannon being brought in and interviewed), I observed ISU Officer S. Pettis open and photograph the contents of a bindle that contained a note which had been confiscated from Ms. K. Hannon. I received written permission from Ms. K. Hannon to search her vehicle.

At approximately 1430 hours, I returned to the ISU office and took (8) digital photographs of the pre-addressed envelopes and the contents within the envelopes.  I processed eight (8) printed digital photographs, one (1) VHS videotape and two (2) pre-addressed envelopes (including contents) into ISU Evidence Locker # 10 per institutional procedures.

5

1
2
3

> On Saturday April 13, 2008, at approximately 2248 hours, Officer W. Childress discovered suspected Heroin at the conclusion of a bowel movement that inmate WILLIAMS had while in BCS cell # 1.

4
5
6
7

> On Monday, April 14, 2008, at approximately 1400 hours, Officer Childress removed the BCS attire from inmate WILLIAMS and placed handcuffs on inmate WILLIAMS.  I assisted Officer Childress with escorting inmate WILLIAMS to Receiving and Release where Registered Nurse A. Kettlehake medically checked and cleared inmate WILLIAMS prior to being re-housed in Administrative Segregation.  I assisted Officer Childress escorting inmate WILLIAMS to Building # 13, Administrative Segregation.

8
9
10

> On Monday, April 14, 2008, at approximately 1600 hours, I placed two (2) CD's into ISU Evidence Locker # 2.  One CD contained the eight (8) digital pictures of the two (2) pre-addressed envelopes I had discovered and the other CD contained the audio interview I conducted with Ms. K. Hannon on April 12, 2008.

11
12
13
14
15
16
17

> In my training and experience, I have witnessed narcotics being passed to inmates from visitors on numerous occasions and in numerous ways.  The narcotics are then smuggled into Mule Creek State Prison for sales and/distribution to other inmates.  Given the amount of suspected narcotics ultimately recovered and the way it was packaged, I believe Ms. K. Hannon passed suspected narcotics to inmate WILLIAMS.  I believe inmate WILLIAMS placed the suspected narcotics into his rectal area so as not to be detected and planned to smuggle narcotics back to Facility "A" for sales/distribution.  Inmate WILLIAMS will remain in the ASU pending disciplinary action and referral to the local District Attorney for possible prosecution.

18   (Dkt. No. 12-7 at 5-7.)

19          The Rules Violation Report describes the amount of heroin discovered after

20   petitioner's bowel movement:

21
22
23

> During further inspection of the bindle I removed seven individual layers of either black latex, clear plastic wrap (cellophane) or lined paper...Afer all layers were removed, I weighed the black tar like substance which had a gross approximate weight of 12.1 grams....

24   (Id. at 3.)

25          The Rules Violation Report states that the black substance found in the bindle was

26   found to be heroin:

1    On Wednesday, May 28, 2008, at approximately 1030 hours, I
     received documentation from the Department of Justice (DOJ)
2    Bureau of Forensic Services, that the suspected Heroin that had
     been recovered by Investigative Services Unit (ISU) Officer W.
3    Childress from the bowel movement of inmate WILLIAMS, E-
     65738, while in Body Cavity Surveillance (BCS) cell # 1 on April
4    13, 2008, and then submitted to the DOJ had tested positive for
     Heroin.
5

6    (Id. at 5.)

7          The Rules Violation Report discusses statements made by petitioner during the

8    body cavity surveillance:

9    On April 13, 2008 at approximately 2231 hours, while conducting
     my duties as an Investigative Services Unit (ISU) Officer, I was
10   supervising inmate WILLIAMS, E-65738 in Body Cavity
     Surveillance (BCS) cell # 1.  Inmate  WILLIAMS stated, "Well are
11   you ready to do this report; I'm ready to handle this."  Inmate
     WILLIAMS informed me that he had one balloon of Heroin in his
12   rectal cavity and was willing to surrender it.  At approximately
     2240 hours, I informed Watch Sergeant U. Chang of inmate
13   WILLIAMS' wish to have a bowel movement.

14   (Id. at 2.)

15         The Rules Violation Report states that on August 10, 2009 petitioner was found

16   guilty based on the following evidence:

17   A.  The written RVR by Officer Childress specifically describing
     that on May 28, 2008, documentation was received from the
18   Department of Justice indicating the evidence seized from inmate
     WILLIAMS analyzed positive for heroin.  The written report by
19   Officer Childress further indicates that on April 13, 2008 while
     observing inmate WILLIAMS who was in Body Cavity
20   Surveillance # 1, inmate WILLIAMS stated, "Well are you ready to
     do this report; I'm ready to handle this."  Inmate WILLIAMS
21   indicated that he had one balloon of heroin in his rectal cavity and
     was ready to surrender it to Officer Childress.  Inmate WILLIAMS
22   then produced a bowel movement which resulted in Officer
     Childress discovering a black latex bindle contained in the plastic
23   bag along with a small amount of fecal matter.

24   B.  Inmate WILLIAM' statement to Officer Childress on April 13,
     2008, specifically, inmate WILLIAMS indicated he had one
25   balloon of heroin in his rectal cavity and was ready to surrender it.
     "Well are you ready to do this report; I'm ready to handle this."

26

7

1       C.  Inmate WILLIAMS' failure to provide a statement or testimony
        in his defense during the hearing.

2

3       D.  The Supplemental Report authored by Officer M. Lockhart,
        dated May 28, 2008 indicated that inmate WILLIAMS was
        originally placed in BCS cell # 1 as a result of Officer Lockhart

4       observing inmate WILLIAMS and his approved visitor, Ms.
        Hannon, in the Facility "A" Visiting Room acting suspiciously.

5       Officer Lockhart then observed Ms. Hannon move her right hand
        to the right rear waist area of her pants and remove suspected

6       contraband from her waistband.  Ms. Hannon then observed the
        contraband from her right hand to the left hand of inmate

7       WILLIAMS.  Officer Lockhart then observed inmate WILLIAMS
        move his left hand and arm behind his left side in the area of the

8       top back opening of his state issued denim jeans.  Officer Lockhart
        believed inmate WILLIAMS placed contraband into his rectal

9       cavity with this movement.

10      E) The Department of Justice Analysis report dated May 28, 2008
        indicates the evidence seized from inmate WILLIAMS, E-65738

11      analyzed positive for heroin with an approximate weight of 10.22
        grams net.

12

13      F) the amount of drugs discovered, i.e. Item # 1 contained heroin
        with a net weight of 10.22 grams.  This amount of drugs would
        exceed the amount for personal use in a prison setting.

14

15   (Id. at 9.)

16              B.  Petitioner's Background

17              In support of his claims, petitioner discusses what allegedly occurred during the

18   disciplinary proceedings.  The undersigned sets forth petitioner's version of events herein.

19              Petitioner alleges that on August 5, 2009, he was called to the disciplinary

20   hearing. (Dkt. 1 at 10.)  Petitioner claims that as soon as the hearing started, Lieutenant Kudlata

21   told petitioner that because he was charged only with a Division B Offense, he did not need a

22   staff assistant or an investigative employee.  (Id. at 11.)  Petitioner claims that Lieutenant Kudlata

23   had petitioner waive his right to a staff assistant, an investigative employee, witnesses and his

24   right to review evidence.  (Id.)  Petitioner then plead not guilty.  (Id.)  After that, Lieutenant

25   Kudlata found petitioner guilty and assessed him 120 loss of behavior credits.  (Id.)

26   ////

1    Petitioner claims that after sentencing him, Lieutenant Kudlata stopped the

2  hearing before advising petitioner of his right to appeal and said that he would call petitioner

3  back to the hearing in a few days.  (Id.)

4    Petitioner claims that on August 7, 2009, Lieutenant Austin called petitioner to

5  the hearing room to conduct another disciplinary hearing regarding the same charges as were

6  addressed on August 5, 2009.  (Id.)  After appointing E. Murray as a staff assistant for petitioner,

7  Lieutenant Austin gave petitioner 24 hours to consult with Murray before continuing the hearing.

8  (Id.)

9    Petitioner told Murray that he wanted an investigative employee assigned to

10  review the evidence.  (Id. at 12.)  Murray told petitioner to make that request to Lieutenant

11  Austin.  (Id.)

12    On August 10, 2009, petitioner appeared before Lieutenant Austin for the hearing.

13  (Id.)  Petitioner requested appointment of an investigative employee.  (Id.)  Lieutenant Austin

14  told petitioner that he had already waived the right to an investigative employee and denied the

15  request.  (Id.)  Lieutenant Austin then gave petitioner a new copy of the same rules violation

16  report, but this time the charge was classified as a Division A2(6) offense rather than a Division

17  (B) offense.  (Id.)

18    Petitioner objected to the reclassification of the charge.  (Id.)  Lieutenant Austin

19  did not explain why the offense had been reclassified and went on to find petitioner guilty.  (Id.)

20  Lieutenant Austin sentenced petitioner to 180 days loss of behavior credits.  (Id.)

21    Inmates found guilty of Division B offenses are subject to credit forfeiture of 121

22  to 150 days.  Cal. Code of Regs. tit. 15, § 3323(d).  Inmates found guilty of Division A2 offenses

23  are subject to credit forfeiture of 151 to 180 days.  Id.

24    C.  Claim One:  Investigative Employee

25    "Prison disciplinary proceedings are not part of a criminal prosecution, and the

26  full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell,

9

1  418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum

2  procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24

3  hours between the time the prisoner receives written notice and the time of the hearing, so that

4  the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence

5  they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call

6  witnesses and present documentary evidence in his defense, when permitting him to do so would

7  not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to

8  the prisoner where the prisoner is illiterate or the issues presented are legally complex.  Id. at

9  563-71. Confrontation and cross examination are not generally required.  Id. at 567.

10                 Regarding legal assistance, the law distinguishes between staff assistants and

11  investigative employees.  A staff assistant, when assigned, is responsible for informing the

12  inmate of his rights and of the disciplinary hearing procedures, advising and assisting the inmate

13  in preparation for the hearing, and representing the inmates position at the hearing.   Cal. Code

14  Regs. tit. 15, § 3318(b).  An investigative employee, when assigned, is responsible for

15  interviewing the charged inmate, gathering information, questioning staff and inmates with

16  relevant information, and screening prospective witnesses.  Cal. Code. Regs. tit. 15, § 3318(a).

17                 Petitioner argues that his right to due process was violated by the failure of prison

18  officials to appoint an investigative employee because he is illiterate.  Petitioner argues that his

19  Test of Adult Basic Education ("TABE") score was below 4.0, and that TABE scores below 4.0

20  demonstrate functional illiteracy.  In the petition, petitioner claims that he cannot read or write.

21  (Dkt. No. 1 at 7.)

22                 Neither party has provided any exhibits demonstrating that a disciplinary hearing

23  was held on August 5, 2009, as petitioner alleges.  The rules violation report from the August 10,

24  2009 hearing states that petitioner had a TABE score below 4.0.  (Id. at 35.)  The report also

25  states that the Hearing Officer elected to have a staff assistant assigned to petitioner because

26  petitioner's TABE score was below 4.0 and to ensure effective communication.  (Id.)  The report

1   also states that petitioner waived his right to an investigative employee.  (Id.)

2           In his reply to the answer, petitioner requests an evidentiary hearing to address

3   whether he *validly* waived his right to an investigative employee.  As discussed above, petitioner

4   claims that on August 5, 2009, Lieutenant Kudlata told him that he did not need an investigative

5   employee because his offense had been classified as a Division B offense.  Based on this

6   representation, petitioner claims that he waived his right to an investigative employee.  Petitioner

7   argues that a staff assistant should have been appointed on August 5, 2009 to help him in

8   deciding whether he should waive this right.  Petitioner claims that when he found out his

9   offense had been reclassified to a division A2 offense at the August 10, 2009 hearing, he

10  requested an investigative employee.

11          Petitioner's request for an evidentiary hearing is foreclosed by the Supreme

12  Court's decision in Cullen v. Pinholster, 131 S. Ct. 1388 (2011).  In Pinholster, the Supreme

13  Court held that habeas "review under § 2254(d)(1) is limited to the record that was before the

14  state court that adjudicated the claim on the merits."   131 S. Ct. at 1398.  The Supreme Court

15  reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination

16  of the state-court decision at the time it was made" and that, therefore, the record under review

17  must be "limited to the record in existence at that same time i.e., the record before the state

18  court."  Id.

19          The Supreme Court held that this reading was "compelled" by the structure of the

20  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which it held conveyed

21  "Congress' intent to channel prisoners claims first to the state courts."  Id.  It held that "evidence

22  introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been

23  adjudicated on the merits by a state court, a federal habeas petitioner must overcome the

24  limitation of § 2254(d)(1) on the record that was before the state court."  Id. at 1400.  The

25  Supreme Court noted that this construction did not render superfluous § 2254(e)(2), which sets

26  limits on the availability of evidentiary hearings.  That subsection may apply when a

1   constitutional claim was not "adjudicated on the merits," within the meaning of § 2254(d)(1).  Id.

2   at 1400-01.

3          In the instant case, petitioner's claim was adjudicated on the merits in state court.

4   The Amador County Superior Court issued a reasoned decision addressing the merits of

5   petitioner's claim.  (Dkt. No. 12 at Exhibit 2.)  The California Court of Appeal and California

6   Supreme Court denied petitioner's claims without comment or citation.  (Id. at Exhibits 4, 6.)

7   Pursuant to Pinholster, the undersigned is foreclosed from holding an evidentiary hearing.

8          Turning to the merits of petitioner's claim, a district court may grant habeas relief

9   to a person in state custody only if the state court decision "was contrary to, or involved an

10  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

11  of the United States," 28 U.S.C. § 2254(d)(1), or if the state court decision "was based on an

12  unreasonable determination of the facts in light of the evidence presented in the State court

13  proceeding."  28 U.S.C. § 2254(d)(2).  The state courts decision is based on an "unreasonable

14  determination of the facts" when the petitioner shows by clear and convincing evidence that the

15  courts conclusion was based on factual error, see Wiggins v. Smith, 539 U.S. 510, 528 (2003), or

16  where the state court's weighing of the evidence was objectively unreasonable.  See Miller-El v.

17  Cockrell, 537 U.S. 322, 348 (2003).  The state court's individual findings of fact are entitled to a

18  presumption of correctness, which the petitioner must rebut by clear and convincing evidence.

19  See 28 U.S.C. § 2254(e)(1).

20         Assuming an investigative employee should have been appointed to assist

21  petitioner, the failure to do so did not have a "substantial and injurious effect" on the outcome of

22  the hearing.  Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).  In other words, petitioner has

23  not demonstrated actual prejudice.  See id.  The evidence against petitioner was overwhelming.

24  Before the heroin was found on his body, petitioner admitted that he had it in him.  It does not

25  appear that petitioner had any defense to the charges.  Petitioner does not allege how an

26  investigative employee would have assisted him in preparing for the hearing.

1    Because petitioner has demonstrated no prejudice as a result of the failure of

2  prison officials to appoint an investigative employee, the undersigned finds that the denial of this

3  claim by the Amador County Superior Court, the last state court to issue a reasoned decision

4  addressing this claim, was not an unreasonable application of clearly established Supreme Court

5  authority.  Accordingly, this claim should be denied.

6             D.  Claim Two:  Notice of Charges

7    Petitioner argues that he was denied his right to adequate notice of the charges

8  when he was informed at the August 10, 2009 hearing that his offense had been reclassified as a

9  division A2 offense.

10    As discussed above, due process requires that a prisoner facing a disciplinary

11  hearing must be given advance notice of the disciplinary charges against him in order to enable

12  him to marshal the facts and prepare a defense.  Wolff, 418 U.S. at 564.

13    Assuming petitioner's version of events, i.e., that disciplinary hearings were held

14  on August 5, 2009, and August 10, 2009, petitioner does not claim that he was not given

15  adequate notice of the actual charges.  Rather, he claims that he was not given adequate notice of

16  the reclassification of his offense.  As indicated above, how an offense is classified determines

17  the amount of credit loss a prisoner may be assessed.  Notice of the classification does not enable

18  a petitioner to marshal the facts and prepare a defense.  Moreover, petitioner does not

19  demonstrate how he was prejudiced as a result of allegedly receiving inadequate notice of the

20  classification of his offense.

21    Assuming petitioner's version of events, for the reasons discussed above, the

22  undersigned does not find that petitioner's right to adequate notice of the charges was violated.

23  The denial of this claim by the Amador County Superior Court was not an unreasonable

24  application of clearly established Supreme Court authority.

25  ////

26  ////

1          E.  Claim Three:  Witnesses

2          Petitioner alleges that he was denied his right to call witnesses.  Petitioner alleges,

3   in essence, that his alleged waiver of his right to witnesses at the August 5, 2009 hearing was not

4   valid because he was illiterate and should have had a staff assistant assigned to help him in

5   making this decision.

6          As discussed above, in disciplinary hearings prisoners have the right to call

7   witnesses when it would not be unduly hazardous to institutional safety or correctional goals.

8   Wolff, 418 U.S. at 563-71

9          The Rules Violation Report from the August 10, 2009 hearing states, in relevant

10  part,

11          Subject DID request witnesses present at the hearing as indicated
            on the CDCR-115-A; however, inmate WILLIAMS elected to
12          waive his request to view the video recording during the hearing as
            noted by his signature on the 115A.

13

14  (Dkt. No. 12-7 at 9.)

15          Although somewhat unclear, the statement in the August 10, 2009 Rules Violation

16  Report suggests that petitioner requested as witnesses persons who made statements on a video

17  recording.  Because petitioner decided not to offer the video recording as evidence in support of

18  his case, his request to call as witnesses the persons on the video was denied.

19          Petitioner's claim that his invalid waiver of witnesses at the August 5, 2009

20  hearing was improperly upheld at the August 10, 2009 hearing is not entirely consistent with the

21  August 10, 2009 rules violation report.  The August 10, 2009 rules violation report states that

22  petitioner, in essence, withdrew his request for witnesses after opting not to offer a video

23  recording as evidence.  Moreover, nowhere in the record does petitioner identify his witnesses or

24  discuss how they would have aided his defense.

25          For the reasons discussed above, the undersigned finds that petitioner's claim

26  alleging violation of his right to call witnesses is vague and unsubstantiated and does not warrant

14

1   habeas relief.  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations which are

2   not supported by a statement of specific facts do not warrant habeas relief.)  Petitioner does not

3   address the statements in the rules violation report addressing his request for witnesses, nor does

4   he identify his witnesses.  The denial of this claim by the Amador County Superior Court was not

5   an unreasonable application of clearly established Supreme Court authority.  Accordingly, this

6   claim should be denied.

7                     F.  Claim Four:  Appeal Process

8            Petitioner argues that he was denied an adequate appeal process.  In support of

9   this claim, petitioner refers to pages 11-12 of his supplemental brief.  Page 11 of petitioner's

10  brief begins with the caption, "Petitioner Meets the Exception to Exhaustion in that, the

11  Administrative Remedies are Inadequate."  (Dkt. No. 1 at 19.)  Petitioner then goes on to argue

12  that inmates with TABE scores below 4.0 should be provided with assistance when preparing

13  their administrative appeals.

14           Petitioner's claim that he should have been appointed an administrative assistant

15  when pursuing his administrative appeals regarding the claims raised in the instant action is not

16  cognizable in the instant action.  A ruling in petitioner's favor as to this claim has no bearing on

17  the validity of his disciplinary conviction.  Accordingly, this claim should be denied.

18                    G.  Claim Five:  Restoration of Credits

19           Petitioner argues that he should have been given credit for the time he spent in

20  administrative segregation ("ad seg") prior to the guilty finding.  In support of this claim,

21  petitioner refers to pages 12-14 of his supplemental brief.

22           In pages 12-14 of his supplemental brief, petitioner alleges that he was placed in

23  "ad seg" on April 14, 2008, for possession of heroin.  (Dkt. No. 1 at 20.)  Petitioner alleges that

24  from April 14, 2008, to the date he signed his petition, he was denied the right to a visit of any

25  kind.  (Id.)

26  ////

15

1    After finding petitioner guilty on August 10, 2009, in addition to assessing time

2  credits, Lieutenant Austin also ordered that petitioner would not be allowed visits from August

3  10, 2009, to August 10, 2010, to be followed by two years of non-contact visit status from

4  August 11, 2010, to August 11, 2012.  (Dkt. No. 12-7 at 10.)

5    Although initially framed as a claim challenging time spent in ad seg, petitioner

6  appears to argue that in assessing the loss of visitation, Lieutenant Austin did not consider that

7  petitioner had already been denied visits beginning April 14, 2008.  (Dkt. No. 1 at 21.)  Petitioner

8  argues that by assessing this punishment from the date of the hearing, instead of from the date

9  petitioner was placed in ad seg on April 14, 2008, his punishment exceeded the statutory limits.

10  (Id.)

11    In support of this claim, petitioner cites California Code of Regulations tit. 15, §

12  3322(b) which provides,

13        Time spent in segregation pending a disciplinary hearing shall
          normally be credited toward any disciplinary detention or confined
14        to quarters sentence imposed.  Reasons for not granting such credit
          shall be explained in the disposition section of the CDC Form 115.

15

16    The section cited above does not state that in assessing the loss of visiting

17  privileges, disciplinary hearing officers must take into account any previous loss of visitation

18  related to the pending charges.  Rather, the section cited above only concerns time spent in

19  segregation.  Petitioner's claim challenging the loss of visitation is without merit.  The denial of

20  this claim by the Amador County Superior Court was not an unreasonable application of clearly

21  established Supreme Court authority.  Accordingly, this claim should be denied.

22  IV.  Conclusion

23    Accordingly, for all of the above reasons, IT IS HEREBY RECOMMENDED that

24  petitioner's application for a writ of habeas corpus be denied.

25    These findings and recommendations are submitted to the United States District

26  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

1    one days after being served with these findings and recommendations, any party may file written

2    objections with the court and serve a copy on all parties.  Such a document should be captioned

3    "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

4    objections, he shall also address whether a certificate of appealability should issue and, if so, why

5    and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

6    the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

7    2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

8    service of the objections.  The parties are advised that failure to file objections within the

9    specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

10    F.2d 1153 (9th Cir. 1991).

11    DATED:  November 14, 2011

12

13

                                    _____
KENDALL J. NEWMAN

14                                     UNITED STATES MAGISTRATE JUDGE

15    will1762.157

16

17

18

19

20

21

22

23

24

25

26